NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TODD P., <br><br>　　Plaintiff, <br><br>　　v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>　　Defendant. | Civil Action No. 22-2754 (RK) <br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Todd P.'s ("Todd")[1] appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration's (the "Commissioner"), which denied Todd's request for disability insurance benefits. Plaintiff filed his supporting brief on September 12, 2022 (ECF No. 9), and Defendant responded on October 25, 2022 (ECF No. 10). The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

**I.　BACKGROUND**

In this appeal, the Court must answer two primary questions. *First,* whether substantial evidence supports Administrative Law Judge Scott Tirrell's ("Judge Tirrell") determination that Plaintiff's combination of impairments did not meet the severity of any listed impairment. *Second,*

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

1

whether substantial evidence supports Judge Tirrell's determination of Plaintiff's residual functional capacity ("RFC")?

### A. PROCEDURAL POSTURE

Todd filed an application for disability and disability insurance benefits on December 4, 2018, alleging an onset date of January 23, 2018. (Administrative Record at 15.)[2] The Social Security Administration (the "Administration") denied the request initially on July 23, 2019, and on reconsideration on September 4, 2019. (*Id.* at 76–102, 105–09.) Thereafter, Todd requested a hearing (*id.* at 115–16), and Judge Tirrell held a telephonic hearing on September 22, 2020, at which Todd, represented by counsel, and a vocational expert testified (*id.* at 38–75). Judge Tirrell ordered a post-hearing psychological consultative examination, which was conducted on December 28, 2020. (*Id.* at 606–08.) On April 4, 2021, Judge Tirrell issued a written opinion in which he determined that Todd was not disabled. (*Id.* at 15–33.) Todd appealed that decision, and the Administration's Appeals Council affirmed Judge Tirrell's decision. (*Id.* at 177–80; 248–54.) This appeal followed. (ECF No. 1.) Todd filed his moving brief on September 12, 2022 (ECF No. 9), and the Commissioner filed an opposition brief on October 25, 2022 (ECF No. 10).

### B. JUDGE TIRRELL'S DECISION [3]

In his decision, Judge Tirrell held that Todd was not disabled under the prevailing Administration regulations. (*See generally* AR at 15–33.) Judge Tirrell set forth the five-step process for determining whether an individual is disabled. (*Id.* at 16–18 (citing 20 C.F.R.

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 6-1 through 6-8. This opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Judge Tirrell addressed Todd's physical limitations, including finding the severe impairment of "cervical degenerative disc disease with cervical radiculopathy." (AR at 18, 22–23, 26–27.) However, because Todd solely contests Judge Tirrell's findings with respect to his psychological impairments (*see generally* ECF No. 9), the Court does not address Judge Tirrell's findings as they relate to Todd's musculoskeletal issues.

§ 404.1520(a)).) At Step One, Judge Tirrell found that Todd had not "engaged in substantial gainful activity since . . . the alleged onset date." (*Id.* at 18 (citing 20 C.F.R. § 404.1571).) At Step Two, Judge Tirrell found that Todd suffered from several severe impairments, including panic disorder with agoraphobia, generalized anxiety disorder, and major depressive disorder. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) At Step Three, Judge Tirrell determined that Todd did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 19–21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Tirrell concluded that Todd had the RFC to "perform light work" with limitations accommodating his upper left extremity and that he was limited to "occasional interaction with coworkers and supervisors" and he could never "work in tandem with coworkers" or "have interaction with the public." (*Id.* at 21–31.) At Step Four, Judge Tirrell concluded that Todd "is unable to perform any past relevant work." (*Id.* at 31 (citing 20 C.F.R. § 404.1565).) Finally, at Step Five, Judge Tirrell concluded that "there are jobs that exist in significant numbers in the national economy that [Todd] can perform." (*Id.* at 31 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)

This appeal concerns Judge Tirrell's Step Three and RFC determinations. As to the Step Three determination, Judge Tirrell set out the required showings of the two Listings Todd challenges on appeal: Listing 12.04 ("depressive, bipolar disorders") and Listing 12.06 ("anxiety and obsessive-compulsive disorder"). (*Id.* at 19 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1).) Judge Tirrell considered whether Todd met each listing's Paragraph B requirements, which required the claimant to show either one extreme limitation or two marked limitations in four broad areas of functioning.

Function 1. Judge Tirrell found a mild limitation in understanding, remembering, or

3

applying information. Todd reported difficulty with memory, understanding, following instructions and completing some tasks (*id.* at 19 (citing Ex. 2E)). At the same time, he reported that he had sufficient memory to take care of his own personal needs, and he was able to perform recall tasks at his psychological consultative examination (*id.*). Progress notes from Booker Behavioral Health described Todd's cognition and memory as "grossly intact" and his insight and judgment as "fair." (*Id.* (citing Ex. 3F).)

Function 2. Judge Tirrell found a marked limitation in Todd's ability to interact with others based on his reports of difficulty with social interaction and reported social anxiety. (*Id.* at 20.) Judge Tirrell did not find a severe limitation, noting based on treatment records from Booker Behavioral Health that Todd was "cooperative, verbally engaged, supportive to peers, identified personal experiences, shared without prompting, provided constructive feedback to others, and was receptive to feedback." (*Id.*)

Function 3. Judge Tirrell found a moderate limitation in Todd's ability to concentrate, persist or maintain pace. (*Id.*) While Todd reported difficulty with some memory- and comprehension-related tasks, he was able to take care of his personal needs without assistance, perform some household chores, and perform errands that required "some concentration and persistence." (*Id.*)

Function 4. Judge Tirrell found a moderate limitation on Todd's ability to adapt or manage himself. (*Id.*) Although Todd was diagnosed with agoraphobia and panic disorder, progress notes showed he was stable on medications (*id.* (citing Exs. 3F, 5F, 6F, 10F)) and that he had appropriate grooming and hygiene habits, and no difficulty getting along with providers and staff or controlling his temper (*id.* at 20–21). Judge Tirrell also considered whether the Paragraph C requirements were met and found that "the evidence fails to establish the presence

4

of the [Paragraph C] criteria." (*Id.* at 21.)

In reaching his RFC determination, Judge Tirrell developed a ten-paged record detailing Todd's description of symptoms, medical records, and treatment history. (*Id.* at 21–31.) Judge Tirrell took note of Todd's subjective complaints of "panic attacks" as well as "depression, trouble sleeping, trouble being outside, and trouble being around people." (*Id.* at 22.) He then compared Todd's subjective complaints to the medical records and found Todd's statements regarding "the intensity, persistence and limiting effects of these symptoms [] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 23.) At Todd's initial psychiatric evaluation in April 2018, Todd's "thought process was linear," his "insight and judgment was fair," and his "cognition and memory were grossly intact." (*Id.* at 23–24.) In October 2014, it was noted that his "mood and affect was appropriate, and he was cooperative." (*Id.* at 23.) At an office visit in April 2019, Todd's "thought content was normal," "he was goal directed," and "[h]is memory, attention, concentration, insight, and judgment were all fair." (*Id.* at 24.) Judge Tirrell noted the medications Todd has been on, including Paxil (*id.* at 23), Xanax (*id.* at 24), Seroquel (*id.* at 24), Alprazolam (*id.* at 24), Quetiapine (*id.* at 24), and Doxepine (*id.* at 25). In November 2019, Todd's "panic attacks were noted to be controlled with Xanax/Alprazolam, but with ongoing worries." (*Id.* at 24.) Judge Tirrell noted "alleged various side effects" from Todd's medications but that they were "mild and would not interfere with the claimant's ability to perform work activities in any significant manner." (*Id.* at 29.) At a July 2020 examination by a licensed clinical social worker, Todd presented "with anxiety with moderate impact in functioning." (*Id.* at 26.) At Todd's post-hearing psychological consultative examination with Dr. Christopher Williamson, the examiner "opined the claimant is competent to handle his own finances and noted he had a guarded prognosis." (*Id.* at 26 (citing Ex. 11F).)

5

Summarizing Todd's treatment history, Judge Tirrell noted that the entire record, "including the more current evidence," shows that Todd's psychotic symptoms "are being treated with psychotherapy and psychotropic medications that have been effective in managing [his] symptoms." (*Id.* at 27 (citing Ex. 9F).) Furthermore, his "treatment has been conservative and the medical signs do not support a more restrictive functional capacity." (*Id.* at 30.) Judge Tirrell noted that the treatment records "do not include a description that he requires assistance with daily activities but in fact indicate[s] his condition is stable with medications, [and] that his memory, attention, concentration and cognition remains intact." (*Id.* at 28.) At his "numerous in-office examinations, the claimant did not exhibit severe cognitive deficits." (*Id.*) "[M]ore often than not, mental status examinations show he was full[y] oriented, with intact short-term and long-term memory, intact attention and concentration, normal motor activity with normal speech and normal thought process and normal thought content." (*Id.* (citing Exs. 2F, 5F, 7F, 8F and 10F).)

Judge Tirrell accounted for any "social limitations" supported by medical evidence in crafting Todd's RFC. (*Id.* at 28.) The ALJ found that Todd should be limited to "occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, but he could never work in tandem with coworkers to complete job tasks, such as with assembly line work. Lastly, the claimant could never have interaction with the public required in order to perform job tasks." (*Id.* at 21; 30–31.) In making his RFC determination, Judge Tirrell also partially credited the opinions of two state agency psychologists, who found Todd "capable of performing simple and complex tasks, with reduced exposure to the public and coworkers." (*Id.* at 29 (citing Exs. 1A, 3A).) "Accordingly, [Judge Tirrell] incorporated limitations for simple, routine tasks, adapting limitation, and social limitations, into the above

residual functional capacity finding, as supported by the overall record." (*Id.*)

## II. LEGAL STANDARD

### A. STANDARD OF REVIEW

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) ("If the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." (citation omitted)). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. Nat'l Labor Relations Bd.,* 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted).

In reviewing the record for substantial evidence, the court "may not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'" *Rutherford,* 399 F.3d at 552 (quoting *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992)). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason

or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B.   ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

To be eligible for disability insurance benefits, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(l)(A). A claimant is disabled only if the physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At Step One, a claimant must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For Step Two, the claimant must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(h). Step Three requires that a claimant provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant demonstrates that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability

8

insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to the next step. As a precursor to Step Four, the ALJ must determine whether the claimant's RFC permit them to resume previous employment. *Id.* § 404.1520(a)(4)(iv). If a claimant's RFC permits previous employment, the claimants is not "disabled" and not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x 761, 763 (3d Cir. 2009). At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, the claimant will receive disability insurance benefits. 20 C.F.R. § 404.1520(g).

### III. DISCUSSION

Todd argues that substantial evidence does not support Judge Tirrell's decision at Step Three and in crafting Todd's RFC. The Court first considers Todd's general claim that Judge Tirrell's decision is unsupported by substantial evidence and then addresses his targeted complaints about how Judge Tirrell reached his decision at each step.

#### A.   STEP THREE – IMPAIRMENT LISTINGS

Todd asserts that Judge Tirrell's findings that his mental impairments did not satisfy Listing 12.04 (depressive disorder, bipolar disorder) or Listing 12.06 (anxiety, panic disorder, obsessive-compulsive disorder) were incorrect and that the evidence supported a finding that Todd was disabled under either the Paragraph B or Paragraph C criteria for those listings. (ECF No. 9 at 15–23.)

Todd argues that Judge Tirrell's analysis of the Paragraph B criteria is deficient because he "fails to cite any specific medical evidence aside from a broad and non-specific citation to

9

mental health progress notes." (*Id.* at 18–19.) However, the record belies Todd's contention. Judge Tirrell included specific citations to and discussions of the medical records that permit meaningful review. Judge Tirrell supported his determination that Todd only had a mild limitation in understanding, remembering or applying information by discussing Todd's testimony, his psychological consultative examination, and progress notes from his treating physician. (AR at 19 (citing Exs. 2D, 3F, 11F).) Judge Tirrell's determination that Todd only had a moderate limitation in adapting or managing himself is likewise supported by the ALJ's discussion of progress notes over time showing that Todd was "stable on medications." (*Id.* at 20–21 (citing Exs. 3F, 5F, 6F, 10F).)[4]

Todd also argues that Judge Tirrell should have found the B Criteria were met because "the Plaintiff's ability to interact with others is clearly to an extreme level under the Commissioner's regulations." (ECF No. 9 at 19–21). In support of his position, Todd points to his own testimony, which he claims is supported by objective medical evidence, namely the post-hearing consultative examination report by Dr. Williamson. (*Id.* at 20–22.)

While "an ALJ is obligated to give 'serious consideration' to a claimant's subjective complaints, this does not mean that the ALJ must fully credit a claimant's testimony regarding her pain." *Smith v. Astrue*, 359 F. App'x 313, 317–18 (3d Cir. 2009) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)). "Rather, it simply means that the ALJ must take care to address

---

[4] The Court also considers discussion of the evidence in other sections of Judge Tirrell's decision, which offers further support for his conclusions at Step Three. *See Cosme v. Comm'r of Soc. Sec.*, No. 18-1327, 2020 WL 2079284, at *3 (D.N.J. Apr. 20, 2020) ("[T]he district court looks at the ALJ's decision as a whole and will find that the ALJ has discharged his responsibilities where the ALJ reviewed medical records and discussed the evidence pertaining to the plaintiff's health condition." (citing *Ochs v. Comm'r of Soc. Sec.*, 187 F. App'x 186, 189 (3d Cir. 2006))). The Court also finds ample discussion of the medical evidence in Judge Tirrell's nine-paged discussion of his RFC determination that bolsters his Step Three determination. (AR at 21–31.)

such evidence in the course of his findings." *Id.* Here, Judge Tirrell acknowledged Todd's subjective complaints in his Step 3 analysis. (AR at 19–20 ("[T]he claimant reported problems getting along with people and difficulty with social interaction. He reported he gets anxious when he is around people for too long (Ex. 2E).").) Judge Tirrell viewed these subjective complaints in light of treatment records that contradicted Todd's stated limitations. (*See, e.g.*, *id.* at 20 (noting that treatment records from Booker Behavioral Health "indicated Todd was 'cooperative, verbally engaged, supportive to peers, identified personal experiences, shared without prompting, provided constructive feedback to others and was receptive to feedback'").) After reviewing Todd's treating sources and citing the State agency opinions, "all of which suggest greater sustained capacity than described in testimony," Judge Tirrell concluded that Todd's "subjective complaints and alleged limitations are not fully consistent with the overall record." (*Id.* at 28 (citing Exs. 1A, 2A).)

The "objective medical evidence" Todd cites to argue he suffered an "extreme" limitation is an evaluation prepared by Dr. Williamson after the disability hearing. (ECF No. 9 at 20.) However, the evaluation is a two-paged document prepared at Judge Tirrell's request based on a single interview with Todd. (AR at 606–08.) Judge Tirrell extensively discussed Dr. Williamson's two-paged report, and appropriately weighed it along with records from Todd's treating physician (*id.* at 28 (citing Ex. 2F)) as well as prior medical opinions and administrative medical findings (*id.* at 29–30 (citing Exs. 1A, 3A, 4F, 7F, and 5F)). Judge Tirrell appropriately considered the medical opinions in each report. *See* 20 C.F.R. § 404.1520c (in deciding how to weigh medical opinions and prior administrative medical findings, the ALJ considers supportability, consistency, the length of treatment relationship, and frequency of examination). The fact that Judge Tirrell did not assign Dr. Williamson's opinion the same weight Todd would

11

have does not evidence error. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").[5]

Alternatively, Todd argues that Judge Tirrell "did not provide any articulation" supporting his finding that the Paragraph C criteria were not met. (ECF No. 9 at 22–23.) While Judge Tirrell's conclusion that Todd cites is not surprisingly truncated, Judge Tirrell's indication that he "considered whether the [Paragraph C] criteria are satisfied" and that "the evidence fails to establish" them here, (AR at 21), must be viewed in context of his complete decision. *See Dicesare v. McMahon*, No. 05-2554, 2007 WL 9747560, at *6 (D.N.J. May 4, 2007), aff'd sub nom. *DiCesare v. Comm'r of Soc. Sec.*, 283 F. App'x 973 (3d Cir. 2008) ("Contrary to Plaintiff's argument that the ALJ did not properly consider whether his impairment met or equaled the severity of a listing, the subsequent development of the record and the ALJ's extensive evaluation of the medical evidence proves otherwise."). Todd argues that he has only made "marginal adjustment" as a result of his psychological treatment, (ECF No. 9 at 23), which is one required showing to meet the Paragraph C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, elsewhere in the decision, Judge Tirrell noted that he reviewed Todd's treatment history and concluded that the records showed his "symptoms are being treated with psychotherapy and

---

[5] Todd raises similar arguments — based on his subjective testimony and the report of Dr. Williamson — in asserting that his impairments meet the Paragraph B criteria because he has a marked limitation with respect to (1) concentrating, persisting or maintaining pace and (2) adapting or managing himself. (ECF No. 9 at 21–22); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. For the same reasons the Court did not find this objection persuasive with respect to his ability to interact with others, these arguments do not undermine Judge Tirrell's finding that Todd's limitation in these other two areas was only moderate.

The Court is also unpersuaded by Todd's argument that Judge Tirrell "failed to fully account" for Dr. Williamson's findings. (ECF No. 9 at 27–28.) As detailed above, Judge Tirrell discussed Dr. Williamson's findings at length. His decision not to adopt them reflects his disagreement with Dr. Williamson and his decision to credit other medical evidence on the record, rather than a failure to adequately address them.

psychotropic medications that have been effective in managing" his symptoms. (AR at 27; *see also id.* at 24 ("In November 2019 claimant's panic attacks were noted to be controlled with Xanax/Alprazolam, but with ongoing worries."); *id.* at 20 ("[P]rogress notes at Exhibits 3F, 5F, 6F and 10F show [Todd] is stable on medications. He also reported improved range of affect and that his panic attacks are controlled with alprazolam . . . .").) This is distinguishable from cases in which remand was required for the ALJ to explain why they reached a result. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (remanding for rehearing based in part on ALJ's "hopelessly inadequate step three ruling" that consisted entirely of one-sentence statement that no listing applied).

Even if the Court did not find that substantial evidence supported Judge Tirrell's determination, Todd's claim would fail because any error is harmless. An ALJ's determination at Step Three is subject to ordinary harmless error review, under which the claimant "bears the burden to demonstrate harm." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814–15 (3d Cir. 2016) (non-precedential); *see also Williams v. Comm'r of Soc. Sec.*, No. 20-12254, 2022 WL 279838, at *7 (D.N.J. Jan. 31, 2022) ("[Claimant's] failure to 'affirmatively point[] to specific evidence that demonstrates [s]he would succeed at step three' is fatal to her appeal." (quoting *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016))). Todd recites the language of the Paragraph C criteria in arguing that they are met here but offers no details about how they are met. His argument's one citation to the record includes over two hundred pages of the record. (ECF No. 9 at 23 (citing AR at 270–83, 398–605).) This broad-brush citation is insufficient to permit the Court to determine whether the outcome on remand would be any different, as "[j]udges are not like pigs, hunting for truffles buried in the record." *See Atkins on behalf of Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) (quoting *Doeblers' Pa.*

13

*Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (affirming ALJ's decision and rejecting appellant's argument because the appellant "reference[d] almost 200 pages of medical reports, without any indication as to which specific page or report Appellant would have us review").

B.     PRE-STEP FOUR – RFC DETERMINATION

Todd argues that Judge Tirrell's analysis leading to his RFC determination "contains essentially an inventory and summarization of much of the medical evidence on record." (ECF No. 9 at 24.) Todd relies on notes from his treatment records to argue that even though Judge Tirrell extensively discussed this evidence "none of this evidence cited was actually analyzed by the ALJ in formulating his RFC." (ECF No. 9 at 25.)

However, creating an "inventory and summar[y]" of the available evidence is precisely what the Court looks for in determining whether the ALJ has "ensure[d] that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Court finds that Judge Tirrell's Step Four decision is reinforced by his methodical approach to the evidence, as it shows he considered all relevant information. *See also id.* (the ALJ is not required "to use particular language or adhere to a particular format").

Todd also repeats his argument at Step Four that Judge Tirrell "did not adequately analyze or credit" Todd's testimony demonstrating that he "could not have any significant contact with co-workers or supervisors on a sustained basis." (ECF No. 9 at 25.) However, Judge Tirrell extensively discussed Todd's testimony (AR at 21–22), and after reviewing the objective medical evidence, concluded that the "subjective complaints and alleged limitations are not fully consistent with the overall record." (*Id.* at 28.) Todd's arguments at this point fail to establish that

Judge Tirrell's conclusions were unsupported by substantial evidence, *Morales,* 225 F.3d at 316, but rather impermissibly seek the Court to re-weigh the evidence and find in Todd's favor. *Chandler*, 667 F.3d at 359. Moreover, Judge Tirrell indisputably incorporated Todd's sociability issues in crafting the RFC. (AR at 28.)[6]

---

[6] Todd also suggests that Judge Tirrell committed reversible error at Step Five because Judge Tirrell's determination was "premised on an RFC conclusion that is not based upon substantial evidence." (ECF No. 9 at 14–15.) To the extent Todd makes this argument, the Court declines to reach it because it has found that substantial evidence supported Judge Tirrell's decision at the earlier steps.

## IV.   CONCLUSION

Having reviewed the record as a whole, the affirmance of Judge Tirrell's decision by the Administration's Appeals Council denying Plaintiff benefits is **AFFIRMED**. The Court issues an order consistent with this Memorandum Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: July 31, 2023